UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**UNITED STATES OF AMERICA**,      Case No. 3:12 CV 1326

    Plaintiff,

                                                                      Magistrate Judge James R. Knepp, II

    v.                                                          MEMORANDUM OPINION AND ORDER

**SIX THOUSAND DOLLARS IN U.S.
CURRENCY, ($6,000), et. al.**

    Defendants.

### INTRODUCTION

On May 25, 2012, Plaintiff United States of America filed a verified complaint in forfeiture (Complaint) pursuant to 21 U.S.C. §881(a)(6) against Defendants Six Thousand Dollars ($6,000) and Twenty Thousand Five Hundred and Twelve Dollars and Fifty Cents ($20,512.50) (Defendant Currency). (Doc. 1). Claimant Larry Smith (Smith) filed a verified claim for the Defendant $6,000.00 in U.S. Currency, and claimant Stanley Redd (Redd) filed a verified claim for Defendant $19,000 on July 2, 2012 (collectively, Redd and Smith are referred to as Claimants). (Doc. 5). Claimants filed an Answer on July 20, 2012. (Doc. 7). On December 20, 2012, Claimants filed a Motion for Judgment on the Pleadings (Doc. 15) and a Memorandum in Support of Claimants' Motion for Judgment on the Pleadings (Doc. 15-1). On January 21, 2013, Plaintiff filed an Opposition (Doc. 16) to which Claimants replied (Doc. 17). On February 16, 2013, Plaintiff filed a Sur-Reply. (Doc. 20). For the following reasons, Claimants' Motion for Judgment on the Pleadings is DENIED.

## BACKGROUND

On November 30, 2011, Redd and Smith were riding in a white Dodge Caravan traveling northbound on I-280 in Wood County, Ohio. (Doc. 1, ¶¶ 11, 13). Patrolman Shannon Badgett of Lake Township, Ohio stopped the van for a fictitious plate violation. (Doc. 1, ¶ 11). Patrolman Badgett approached the van and saw Claimants were the only occupants, with Smith as the driver and Redd as the passenger. (Doc. 1, ¶¶ 1, 13). Patrolman Badgett noticed Smith was wearing jeans and had an emptied cigar with loose tobacco spread across his jeans. (Doc. 1, ¶ 14). Patrolman Badgett also detected the odor of burnt marijuana in the van. (Doc. 1, ¶ 15). Redd told Patrolman Badgett he and Smith were from Warren, Ohio en route to Michigan. (Doc. 1, ¶¶ 17). Redd had rented the van from Enterprise Rent-a-Car. (Doc. 1, ¶¶ 12, 13, 17).

While Patrolman Badgett was talking to Redd, Lake Township Patrolman Kelly Clark arrived on the scene. (Doc. 1, ¶¶ 18-19). Patrolman Badgett radioed for a criminal history and was told both Redd and Smith had extensive drug trafficking histories. (Doc. 1, ¶¶ 17-20). Patrolman Clark asked Redd to step out of the van and Redd complied. (Doc. 1, ¶¶ 18-19). Patrolman Badgett performed a pat down search of Redd's person and found large stacks of U.S. Currency in Redd's right and left front pants pockets, totaling $1,512.50 in U.S. currency. (Doc. 1, ¶¶ 21).

Patrolman Clark then approached the van to speak with Smith and observed him rolling a blunt cigar on his lap. (Doc. 1, ¶ 22). Patrolman Clark asked Smith what he was doing but Smith just smiled and did not respond. (Doc. 1, ¶ 22). Patrolman Clark then asked him where he was going and Smith told Patrolman Clark he was going to Toledo to look at homes to buy. (Doc. 1, ¶ 23).

Patrolman Clark noticed an empty wire dog kennel in the back of the van. (Doc. 1, ¶ 24). Smith said he planned to look at puppies while he was in Toledo. (Doc. 1, ¶ 24). Patrolman Clark asked Smith how he would pay for a puppy and whether he had any cash on his person. (Doc. 1, ¶ 26). Smith denied having cash on his person and said he would pay for a puppy on a repayment plan. (Doc. 1, ¶ ¶ 22, 25, 26). When asked about his relationship with Redd, Smith indicated he had known Redd for a long time and said he and Redd used to play tee-ball together. (Doc. 1, ¶ 27).

Patrolman Clark also detected the odor of raw marijuana coming from the van and told Patrolman Badgett. (Doc. 1, ¶ 28). Redd, who was standing next to Patrolman Badgett, stated he had marijuana in his pocket. (Doc. 1, ¶¶ 28, 29). One of the officers then located and removed two small baggies of suspected marijuana from Redd's right front pocket. (Doc. 1, ¶ 29). When asked, Smith told Patrolman Clark he did not know anything about the marijuana and said there were no other drugs or large amounts of money in the van. (Doc. 1, ¶ ¶ 28-31).

Patrolman Clark asked Smith to exit the van, at which time Smith indicated he had about $6,000.00 in his left-rear pocket. (Doc. 1, ¶ 32). Patrolman Clark could see the currency sticking out of Smith's pocket and found it was separated into rubber-banded bundles of $1,000.00 totaling $6,000.00. (Doc. 1, ¶ 34). When asked about the $6,000.00, Smith claimed the currency but said he did not have a job. (Doc. 1, ¶ 31-37). He said he was on disability and received loans and grants. (Doc. 1, ¶ 37).

Pursuant to a probable cause search of Claimants' van, Sergeant Scott Sims of Lake Township Police Department located a black bag between the two front seats containing $19,000.00 in U.S. currency. (Doc. 1, ¶ 35). Patrolman Clark again asked Smith if there was any other money

3

in the van, and Smith again answered, "No." (Doc. 1, ¶ 38). Patrolman Clark then advised Smith of the $19,000.00 in the van. (Doc. 1, ¶ 38). Smith denied ownership and said he did not know anything about that currency. (Doc. 1, ¶ 38).

Patrolman Clark then went to talk to Redd. (Doc. 1, ¶ 39). Redd claimed ownership of the $1,512.50 found in his pocket but said he did not have a job. (Doc. 1, ¶ 40). When Patrolman Clark asked Redd where he was going, he said he wanted to become an entrepreneur and rent homes. (Doc. 1, ¶ 41). When asked how he planned on buying homes without a job, Redd said he could make money when he rents out the houses. (Doc. 1, ¶ 41). When asked about his relationship with Smith, Redd stated the two of them met in prison in 2006. (Doc. 1, ¶ 42).

Patrolman Clark asked Redd if he and Smith planned to buy a dog, and Redd stated they were not going to buy a dog and he did not know what Smith was talking about. (Doc. 1, ¶ 43). Redd said the kennel was in the car because he had taken his dog to the vet before they left for Toledo. (Doc. 1, ¶ 43). Patrolman Clark located the paperwork from the vet in the van, verifying Redd was at the vet the day of the stop. (Doc. 1, ¶ 43).

Patrolman Clark asked Redd about the $19,000.00 in U.S. currency in the black bag, and Redd said it was his. (Doc. 1, ¶ 44). Patrolman Clark asked Redd how he had that much money without a job, and Redd stated he worked from time-to-time. (Doc. 1, ¶ 44).

### STANDARD OF REVIEW

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is adjudicated under the same legal standard used to adjudicate a motion to dismiss under Rule 12(b)(c). *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). Therefore, the Court "should assume [the] veracity of all well-

pleaded allegations" but need not "accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009); *Bell Atlantic Corp. V. Twombley*, 550 U.S. 544, 555-56 (2007). Before the Court is a forfeiture action in rem pursuant to 21 U.S.C. § 881. The pleading standard for civil forfeiture complaints brought under 21 U.S.C. § 881 is governed by the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty and Asset Forfeiture Actions (Supplemental Rules).[1] Supplemental Rule G(2)(f) directs a complaint for civil forfeiture to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supplemental Rule G(2), which the committee added in 2006, did not change the pleading standard for civil forfeiture cases, but rather "carrie[d] the forfeiture case law forward without change." Fed. R.Civ.P. Supp. R. G advisory committee note; *see also United States v. $335,260.00 in U.S. Currency*, 2010 WL 1416919, at *1 (N.D. Ohio 2010) (quotations omitted).

The Sixth Circuit has held the Supplemental Rules impose "a more stringent standard than the pleading requirements [of Rule of 8] of the Federal Rules of Civil Procedure. *United States v. Six Thousand Dollars in U.S. Currency ($6,000.00)*, 2012 WL 2357062, at *2 (S.D. Ohio 2012) (quoting *United States v. Real Prop. Located at 2323 Charns Rd., Milford Twp., Oakland Cty., Mich.*, 946 F.2d 437, 441 (6th Cir. 1991). However, the Rule G pleading requirement does not require "that the government [] . . . carry its burden [of proof] at the pleading stage." *2323 Charns Rd.*, 946 F.2d at 441; *see also* 18 U.S.C. § 983(a)(3)(D) ("no complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish forfeitability of the property.").

---

[1] Federal Rules of Civil Procedure apply to forfeiture actions *in rem* to the extent Supplemental Rules C, E, and G do not address an issue.

## ANALYSIS

Claimants' argument is twofold. First, Claimants correctly assert the Civil Asset Forfeiture Reform Act (CAFRA) increased the Government's burden of proof *at trial* for civil forfeiture cases from probable cause to preponderance of the evidence. Pub. L. 106-85, 114 Stat. 202. In turn, Claimants' argue the Government has failed to plead sufficient facts that support a reasonable belief of forfeiture by a preponderance of the evidence. However, the Government need not prove its case by a preponderance of the evidence at the pleading stage, as Claimants suggest. Rather, the Government need only plead what is required under Supplemental Rule G(2) – "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supplemental Rule G(2)(f). The "reasonable belief" pleading standard is distinct from the government's "preponderance of the evidence" burden of proof at trial. Supplemental Rule G(8)(b)(ii) provides "[i]n an action governed by 18 U.S.C. § 983(c)(1) the complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish forfeitability of the property." Similarly, 18 U.S.C. § 983(c)(1) provides "the Government may use evidence gathered after the filing of the complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture."

Claimants cite a string of pre-CAFRA case law to support their position; namely, that the Government has not established forfeiture by a preponderance of the evidence, which is a higher threshold than the old burden of proof – probable cause. However, Claimants again misinterpret the standard. Pre-CAFRA or post-CAFRA, the Sixth Circuit simply does not require the government to meet its burden of proof when it files a complaint. *United States v. $5,000.00 in U.S. Currency*, 40

F.3d 846, 848 (6th Cir. 1994); *$6,000 in U.S. Currency*, 2012 WL 2357062 at *2. Claimants appear to prematurely seek summary judgment under Fed. R. Civ. P. 56(a) rather than a ruling on a sufficiency of the pleadings. The authority Claimants cite concerns the analysis of evidence for judgment on the merits rather than judgment on the pleadings. *See United States v. $5,000.00 in U.S. Currency*, 40 F.3d 846 (6th Cir. 1994) (reversal of trial court decision granting summary judgment); *United States v. One Hundred Thirty-Four Thousand Seven Hundred and Fifty Two Dollars United States Currency, More or Less*, 706 F.Supp. 1075 (S.D.N.Y. 1987) (district court granted claimant's motion for summary judgment); *United States v. $191,910 in U.S. Currency*, 788 F.Supp. 1090 (N.D. Cal. 1992) (granted summary judgment); *United States v. $12,840.00*, 510 F. Supp. 2d 167 (D. Mass. 2007) (granting the claimant's renewed motion for summary judgment and/or to dismiss the forfeiture complaint after the government failed to conduct discovery after the deadline). Unlike the cases cited by Claimants, the Court is not adjudicating the case on the merits; rather, the Court is assessing whether the Government plead sufficient facts to support a reasonable belief it will be able to meet its burden of proof at trial. Here, the parties have not completed discovery or had an opportunity to gather evidence. (Doc. 20, at 5).

As Claimants concede, "the [G]overnment has presented a set of facts that **might** demonstrate that the seized case was part of some illegal activity" – which is all that is required at the pleading stage. (Doc. 15-1, at 7). The Government met the pleading requirements of Supplemental Rule G(2). The factual allegations in the Complaint support a "reasonable belief" the Government will be able to meet its burden of proof at trial. Supplemental Rule G(2)(f); 18 U.S.C. §983(c)(1).

First, police officers confiscated two small baggies of marijuana from Redd's front pocket.

Additionally, the officers smelled raw, burning marijuana emitting from inside the van. Although the amount of marijuana found was small, the presence of drugs at the scene is probative of a relationship between the money seized and illegal drugs. *United States v. $110,873*, 159 F. App'x 649, 652 (6th Cir. 2005) (burden of proof satisfied by showing presence of drugs at the scene in addition to other evidence). The officers also found a total of $26,512.50 in U.S. Currency, a substantial amount of money considering Claimants admitted they do not have jobs. Of the currency, $1,512.50 in stacked bills was found in Redd's right and left front pants pockets, $6,000 was found in Smith's left-rear pocket, and $19,000 was found in a black bag between the two front seats of the van. *United States v. $99,990 in U.S. Currency*, 69 F. App'x 757, 769 (6th Cir. 2003) ("While the presence of a large amount of cash is insufficient, standing alone, to support forfeiture, carrying a large sum of cash is strong evidence of some relationship with illegal drugs.") (internal quotations omitted).

Claimants also gave misleading and conflicting stories when questioned by police officers. *$99,990*, 69 F.App'x at 268 (dispositive that claimant "made several false and misleading statements to, and withheld information from, authorities" in affirming forfeiture); *United States v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 286 (6th Cir. 2003) (criminal activity was probative because claimant twice understated the amount of money he was carrying). Smith twice denied he had any currency. First he lied about not having any cash on him when asked how he planned to buy a puppy in Toledo. (Doc. 1, ¶¶ 24-26). Later, Patrolman Clark asked Smith if there was any money in the van, and Smith said there was not. (Doc. 1, ¶¶ 30-31). Only after being asked to exit the van did Smith admit he had $6,000.00 in his pants pockets. (Doc. 1, ¶ 32). Smith also denied knowing anything

8

about the $19,000.00 that was located in a bag between the two front seats of the van. (Doc. 1, ¶38).

Likewise, Redd gave conflicting statements to police regarding his employment. He initially told police he did not have a job. (Doc. 1, ¶41). However, after the $19,000.00 was found, Redd changed his story and said he worked from time-to-time, without further explanation. (Doc. 1, ¶44).

Similarly, Claimants gave conflicting stories regarding their travel plans. Redd said he and Smith were en route to Michigan. (Doc. 1, ¶17). However, Smith said he and Redd were going to look at houses to buy in Toledo, Ohio. (Doc. 1, ¶23). When questioned about the dog cage in the van, Smith said he planned to look at puppies while in Toledo. (Doc. 1, ¶24). Redd, on the other hand, indicated they were not going to buy a dog, said he had taken his dog to vet earlier that day, and did not know what Smith was talking about. (Doc. 1, ¶43). Claimants' stories also differed about how they first met. Smith told police officers he had known Redd for a long time and used to play tee-ball with him. (Doc. 1, ¶27). However, Redd told officers he and Smith met in prison in 2006. (Doc. 1, ¶42).

Claimants' alleged drug histories are also probative of illegal activity. *United States v. $34,000*, 2007 WL 2710444, at *2 (N.D. Ohio 2007) (holding "unexplained source of income, in conjunction with [the claimant's] criminal drug history, creates a nexus between the drug activity and large amount of cash [$34,000]."). Claimants also admitted to officers they were not employed, and they have not had the opportunity, through discovery, to explain the source of Defendant Currency. A claimant's failure to provide evidence of a legitimate source of income becomes relevant because it would leave the government's allegations of illegal activity unrefuted. *See United States v. $16,757.00 in U.S. Currency,* 2012 WL 1865415 (N.D. Ohio 2012).

## CONCLUSION

All the aforementioned facts, taken together, support a reasonable belief the Government will be able to meet its burden of proof at trial. Therefore, the Government has met the pleading requirements of Supplemental Rule G(2). Accordingly, Claimants' Motion for Judgment on the Pleadings is DENIED.

IT IS SO ORDERED.

s/James R. Knepp II<br>
United States Magistrate Judge